```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF TENNESSEE
                       WESTERN DIVISION
```
_____

JAMES W. DONALDSON,              )
                                 )
        Plaintiff,               )
                                 )
vs.                              )       No.  05-2595 MlV
                                 )
JO ANNE B. BARNHART,             )
Commissioner of Social           )
Security,                        )
                                 )
        Defendant.               )
_____

                    REPORT AND RECOMMENDATION
_____

Plaintiff, James W. Donaldson, appeals from a decision of the Commissioner of Social Security ("Commissioner") denying Donaldson's claim for a period of disability, disability insurance benefits, and supplemental security income benefits under Title II and Title XVI of the Social Security Act. In the appeal, Donaldson argues that: (1) the ALJ failed to properly evaluate Donaldson's complaints of pain and made a credibility finding that is not based on substantial evidence; and (2) the ALJ's finding that Donaldson has the residual functional capacity to perform his past relevant work is not based on substantial evidence. The appeal was referred to the United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons that follow, it is recommended that the case be

affirmed.

<div align="center">PROPOSED FINDINGS OF FACT</div>

A.  Procedural History

On July 22, 2002 and October 2, 2003, Donaldson applied for social security disability insurance benefits and supplemental security income, alleging disability commencing in June 2002 due to back pain, a broken rib, high blood pressure and vision problems. (R. 57, 171-174, 179-182.)  His claim was denied initially and again upon reconsideration.  (R. 34-37, 43-46, 51-54, 159-164, 167-170.)  Donaldson requested a hearing, which was held on August 11, 2004 before Administrative Law Judge Hubert E. Graves ("the ALJ"). (R. 31, 215-230.)

On March 9, 2005, the ALJ issued his decision in which he found that Donaldson was not under a disability as defined by the Social Security Act at any time through the date of the decision. (R. 13-22.)  On June 30, 2005, the Social Security Administration Appeals Council denied Donaldson's request for review of the ALJ's decision.  (R. 5-11.)  Accordingly, the ALJ's decision became the Commissioner's final decision.  On August 16, 2005, Donaldson appealed the Commissioner's decision in the United States District Court.[1]

---

[1] Three briefs were filed by the parties and considered by the court: (1) Donaldson's December 30, 2005 brief in support of

B.   Donaldson's Work Experience

Donaldson was born on September 14, 1943. (R. 218.)  He was sixty years old at the time of the hearing and has a sixth grade education.[2]  (*Id.*)  Donaldson has worked for Furniture Service and Delivery and A-Safeway Moving & Storage as a truck driver and delivery person, for T&L Delivery Service as a courier delivery driver, and for Blume Tree Service as a tree service ground man. (R. 77-81.)   Donaldson reported that all of his jobs required frequently lifting fifty pounds or more.  (*Id.*)

At the hearing, Donaldson testified that the last time he worked was for a furniture delivery business in September of 2001 and that he quit working because of back problems.  (R. 219-220, 227.)  One of Donaldson's work history reports also indicates that he left his last job at Furniture Service and Delivery in September of 2001.   (R. 77.)   However, other documents in the record contradict this testimony and indicate that Donaldson continued working part-time at least until October 2003.[3]

For example, Donaldson's July 22, 2002 application for

---

the appeal; (2) the Commissioner's January 30, 2006 memorandum in support of the Commissioner's decision; and (3) Donaldson's February 24, 2006 reply brief.

[2] Other documents in the record indicate that Donaldson completed fifth grade or eighth grade.  (R. 63, 101.)

[3] Many of those documents also inconsistently report the dates worked at each job.

supplemental security income states that he worked for Furniture Service and Delivery from July 2002 to "continuing." (R. 179-182.) In a disability report dated July 22, 2002, Donaldson checked yes to the question "Are you working now?" and stated that he worked as a truck driver since 1968, with no end date noted. (R. 57-58.) In a work activity report completed July 22, 2002, Donaldson reported that he worked for Furniture Service and Delivery twenty hours per week starting January 1, 2002, and left the end date blank. (R. 67.) The interviewer noted that Donaldson "is currently working but performing under SGA." (R. 72.)

In addition, Donaldson's October 2, 2003 application for supplemental security income states that he worked for "TLC" from October 2003 to "continuing." (R.171-174.) An October 2, 2003 work activity report states that Donaldson worked four hours per day for T&L Delivery Company, beginning on September 1, 2002, with no end date noted. (R. 88.) The interviewer noted that Donaldson "is currently working but he is not performing SGA." (R. 93.) A disability report dated October 3, 2003 states that Donaldson worked four hours a day, two days a week, as a truck driver/packer from September 2002 to "present." (R. 98-99.) Finally, a fatigue questionnaire completed by Donaldson's son on October 19, 2003 also reported that Donaldson was "still working, but activities have slowed down." (R. 104.)

4

C.   Donaldson's Medical History

Donaldson alleges that he has been disabled since June 1, 2002. (R. 171-174, 179-181.) On October 11, 2002 and October 27, 2003, Donaldson was examined by a consulting physician, Dr. Paul Katz. (R. 118-120, 127-130.) Donaldson testified that Dr. Katz saw him once and spent less than five minutes examining him. (R. 226.) Dr. Katz found that Donaldson had hypertension and marked elevation of his blood pressure. (R. 118-120, 127-130.) Dr. Katz found no other impairment-related limitations and instructed Donaldson to follow-up with his regular physician. (*Id.*)

Because he did not have insurance, Donaldson did not see any other physician until January 14, 2004. (R. 102, 106, 115-116, 142-147.) At that time, Donaldson sought emergency treatment at the Regional Medical Center for severe back pain. (R. 142-147.) A nurse and a physician noted that Donaldson stated "he is here to get his disability started." (R. 143-144.) Donaldson was diagnosed with arthritis and diabetes mellitus and directed to seek follow-up treatment. (R. 142-147.) Thereafter, Donaldson was treated at the Health Loop, where he was examined by nurse practitioner Frances Edwards who noted diabetes, hypertension, renal insufficiency, and right shoulder pain. (R. 134, 189.)

A physical residual functional capacity assessment completed in October 2002 by medical consultant Dr. George Bounds determined

that Donaldson could lift 25 pounds frequently and 50 pounds occasionally, stand or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. (R. 121-126.) The medical consultant also noted that Donaldson had visual limitations of near and far acuity. (R. 123.) A vocational assessment also completed in October 2002 determined that Donaldson retained the residual functional capacity for medium work, with limited near and far acuity, and was capable of performing his past relevant occupation of tree service ground man as defined as "Tree Pruner" in the Dictionary of Occupational Titles ("DOT") 404.684-018. (R. 85-86.)

In October 2003, Donaldson's son completed a pain questionnaire, in which he reported that Donaldson has constant pain in his left shoulder blade. (R. 105-108.) He reported that Donaldson takes four aspirin every three hours, which relieves the pain for an hour or two. (*Id.*) Donaldson reportedly helps his wife clean and cook, prepares and cooks his meals everyday, grocery shops twice a week, and cleans, does laundry, and cooks without assistance. (R. 103-104.) Although his son reported that he rests after about thirty minutes of activity, he stated that Donaldson goes fishing, walks to the store, cuts the lawn, and delivers furniture. (*Id.*) In November 2003, medical consultant Dr. Bounds found that Donaldson had no medically determinable physical

impairment. (R. 131.)

D.  The ALJ's Decision

Using the five-step disability analysis,[4] the ALJ found that Donaldson was not entitled to a period of disability, disability insurance benefits, or supplemental security income benefits. (R. 13-22.) The ALJ found that Donaldson has severe impairments of hypertension, diabetes mellitus, and degenerative arthritis of the lumbar spine, but that those impairments do not meet or equal a listed impairment. (R. 17, 21.) The ALJ found that Donaldson retains the residual functional capacity to lift 25 pounds frequently and 50 pounds occasionally, which does not preclude

---

[4] Entitlement to Social Security benefits is determined by a five-step sequential analysis set forth in the Social Security Regulations. 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be engaged in substantial gainful activity for a period of not less than twelve months. 20 C.F.R. § 404.1520(c). Second, a finding must be made that the claimant suffers from a severe impairment. *Id.* Third, the ALJ determines whether the impairment meets or equals the severity criteria set forth in the Listing of Impairments contained in the Social Security Regulations. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. If the impairment satisfies the criteria for a listed impairment, the claimant is considered to be disabled. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must undertake the fourth step in the analysis and determine whether the claimant has the residual functional capacity to return to any past relevant work. 20 C.F.R. § 404.1520(e). If the ALJ finds the claimant unable to perform past relevant work, then, at the fifth step, the ALJ must discuss whether the claimant can perform other work which exists in significant numbers in the national economy. 20 C.F.R. § 404.1520(f).

performance of his past relevant work as a courier delivery driver and tree service ground man. (R. 20-21.) In reaching this conclusion, the ALJ considered the opinion of the consultative examining physician, Dr. Katz, records from treating physicians and a treating nurse practitioner, and the record as a whole. (R. 18-20.) The ALJ also found that "[t]he claimant's allegations and testimony as to disabling pain and other symptoms are unsupported by objective medical evidence and are not credible." (R. 21.)

### PROPOSED CONCLUSIONS OF LAW

On appeal, Donaldson contends that the Commissioner's decision should be reversed or, in the alternative, remanded because: (1) the ALJ failed to properly evaluate Donaldson's complaints of pain and made a credibility finding that is not based on substantial evidence; and (2) the ALJ's finding that Donaldson has the residual functional capacity to perform his past relevant work is not based on substantial evidence.

### A.   Standard of Review

Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision, and whether the Commissioner used the proper legal criteria in making the decision. 42 U.S.C. § 405(g); *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994); *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). Substantial evidence is more than a scintilla of

evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record taken as a whole and must take into account whatever in the record fairly detracts from its weight.  *Abbott*, 905 F.2d at 923.  If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." *Barker*, 40 F.3d at 794 (quoting *Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989)).  Similarly, the court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).

B.   <u>Donaldson's Complaints of Pain & the ALJ's Credibility Finding</u>

Donaldson contends that the ALJ failed to properly consider the factors set forth in 20 C.F.R. § 404.1529(c) for evaluating subjective complaints of pain.  When determining whether a claimant is disabled, an ALJ must consider all symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as

9

consistent with the objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(a), 416.929(a). However, statements about pain or other symptoms will not alone establish that a claimant is disabled. *Id.* According to the regulations, "there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all the other evidence . . . , would lead to a conclusion that you are disabled." *Id. See also Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994).

"Other evidence" includes information about the claimant's prior work record, the claimant's statements about symptoms, evidence submitted by treating or non-treating sources, and observations by consultants and other persons. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). With respect to symptoms such as pain, relevant factors include: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the pain or other symptoms; (5) treatment other than medication that the claimant received for relief of pain or other symptoms; (6) any measures the claimant used to relieve pain or other symptoms; and (7) other factors

concerning the claimant's functional limitations and restrictions due to pain or other symptoms. *Id.*

First, Donaldson argues that the ALJ did not consider whether Donaldson had an underlying medical condition that could be expected to produce his subjective complaints of pain. Donaldson claims that "the ALJ solely relied on a five minutes [sic] examination by the hired consultant examiner, Dr. Paul J. Katz, and totally ignored the treating physicians and nurse practitioner from Mid-South Health Group." (Pl.'s Br. at 5.)

In response, the Commissioner contends that the ALJ properly evaluated Donaldson's subjective complaints of pain. To determine whether Donaldson had an underlying medical condition expected to produce his pain, the ALJ considered both Dr. Katz's opinion and nurse practitioner Edwards' treatment notes. The Commissioner argues that the ALJ properly discredited the nurse practitioner's treatment notes concerning renal insufficiency and right shoulder pain. The ALJ stated:

> The record contains no objective clinical or laboratory findings of any medical condition which could produce right shoulder pain or any ongoing complaints thereof, nor are there any documented findings of renal insufficiency or any complaints attributable thereto. There is thus no documentation of any shoulder or renal condition which could impose any functional limitation.

(R. 19.) The Commissioner states that, although nurse Edwards noted a decreased range of motion in the right shoulder in April

and August 2004,[5] she did not indicate what caused the decreased range of motion or indicate whether the condition would continue for any period of time, nor did she note a decreased range of motion during any other examinations between April and August 2004. (R. 189, 195.) The Commissioner also notes that a nurse practitioner is not an acceptable medical source, and therefore nurse Edwards' opinion is not entitled to significant weight. *See* 20 C.F.R. §§ 404.1513, 404.1527, 416.913, 416.927.

Second, Donaldson claims that in finding his testimony concerning his pain was not credible, the ALJ made findings that were not based on substantial evidence. Specifically, Donaldson argues that he did not work twenty hours per week delivering furniture through October 2003, as found by the ALJ. (R. 20.) In contrast, Donaldson testified that the last time he worked was in September of 2001. (R. 219.) In addition, Donaldson argues that his limited daily activities are not inconsistent with his inability to return to work. Although the ALJ stated that Donaldson cooks, cleans, does laundry, shops for groceries, cuts the lawn, and goes fishing, Donaldson testified that he does not cook or clean. (R. 20, 222.)

In response, the Commissioner contends that the ALJ's

---

[5] The court found that a decreased range of motion was also mentioned in March 2004. (R. 196.)

credibility finding is supported by substantial evidence because the ALJ properly articulated several reasons for discrediting Donaldson's subjective complaints of pain. For example, the Commissioner states that the ALJ properly considered that: (1) some evidence concerning Donaldson's reported daily activities was inconsistent with a finding of disability; (2) Donaldson reported that he did not take any prescription medication; (3) despite alleging that he became disabled in June 2002, Donaldson sought no medical treatment until January 2004 and stated that he did so to obtain disability benefits; (4) none of Donaldson's physicians imposed restrictions on work activity; and (5) Donaldson continued to work twenty hours a week delivering furniture.

This court agrees with the Commissioner that the ALJ properly evaluated Donaldson's subjective complaints of pain and that the ALJ's credibility finding is supported by substantial evidence. First, the ALJ appropriately considered Dr. Katz's opinions, nurse practitioner Edwards' treatment notes, and records from the treating physicians and determined that some of Donaldson's symptoms, such as disabling back pain and right shoulder pain, were not supported by medical evidence. The ALJ gave appropriate weight to the nurse practitioner's opinion. In addition, the ALJ appropriately considered other evidence outlined in 20 C.F.R. § 404.1529(c)(3) to determine that Donaldson's subjective complaints

of pain were not credible. That finding is also based on substantial evidence because a review of the record reveals that Donaldson did not seek medical treatment until a year and a half after the alleged onset of his disability, none of Donaldson's physicians imposed restrictions on his work and he in fact continued working to some extent, and Donaldson performed activities that are inconsistent with disabling pain.

With respect to Donaldson's specific objections, the ALJ's finding that Donaldson continued to work for twenty hours per week is supported by substantial evidence in the record. Two work activity reports, one completed in July 2002 and one completed in October 2003, both after the alleged onset of Donaldson's disability, state that Donaldson worked twenty hours per week or four hours per day. (R. 67, 88.) As discussed above in the section concerning Donaldson's work experience, the record is replete with evidence that Donaldson continued working after September 2001, despite his testimony to the contrary at the hearing. The ALJ's finding is therefore supported by substantial evidence in the record.

In addition, the ALJ's finding that Donaldson's reported activities do not reflect a chronic incapacitating degree of pain or symptoms is also supported by substantial evidence, even though Donaldson testified at the hearing that he does not cook or clean.

14

The record contains evidence that Donaldson helps his wife clean and cook, prepares and cooks his meals everyday, grocery shops twice a week, and cleans, does laundry, and cooks without assistance. (R. 103-104.) The record also contains evidence that Donaldson goes fishing, walks to the store, cuts the lawn, and delivers furniture. (*Id.*) The ALJ's finding is therefore supported by substantial evidence in the record.

Accordingly, for the reasons stated above, it is recommended that the ALJ's credibility finding be affirmed.

C.  Residual Functional Capacity

Step four requires the ALJ to review the claimant's residual functional capacity and the physical and mental demands of the claimant's past work. 20 C.F.R. §§ 404.1520(a)(4)(iv), (e) & (f), 416.920(a)(4)(iv), (e) & (f). When determining the claimant's residual functional capacity, the ALJ may consider "all the relevant medical and other evidence in [the] case record." *Id.* at §§ 404.1520(e), 416.920(e).

Donaldson contends that the ALJ's residual functional capacity finding is not based on substantial evidence because he relied on the medical assessment of Dr. Katz, who only spent five minutes with Donaldson. Donaldson also noted that his work history report indicates that all his prior work required frequently lifting 50 pounds or more. In response, the Commissioner contends that the

15

residual functional capacity finding was appropriate because Dr. Katz examined Donaldson on two different occasions and because the ALJ considered the record as a whole, in accordance with the regulations.

This court agrees with the Commissioner that the ALJ's residual functional capacity finding was supported by substantial evidence. Following a lengthy discussion of the evidence, the ALJ concluded that:

> [T]he record contains only minimal medical evidence of any ongoing medical condition. However, despite the lack of evidence of any ongoing significant impairment, the claimant will be given the benefit of any doubt and found to retain the physical residual functional capacity to perform work involving lifting a maximum of 25 pounds frequently and 50 pounds occasionally. There are no other physical limitations.

(R. 20.) The ALJ also found that, according to the DOT, Donaldson's past work as a courier delivery driver and tree service ground man involved lifting a maximum of 25 pounds frequently and 50 pounds occasionally. Therefore, the ALJ found that Donaldson retained the residual functional capacity to return to his past relevant work.

The ALJ's residual functional capacity finding is generally consistent with the residual functional capacity assessment completed by medical consultant Dr. George Bounds, in which Dr. Bounds determined that Donaldson could lift 25 pounds frequently

16

and 50 pounds occasionally, stand or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. (R. 121-126.) Dr. Bounds also noted that Donaldson had visual limitations of near and far acuity. (R. 123.) The ALJ's finding was also consistent with the vocational assessment that found Donaldson retained the residual functional capacity for medium work, which is defined as work that involves "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c).

The ALJ's determination that Donaldson could return to his past relevant work is also supported by substantial evidence. Although Donaldson reported that all of his past jobs required frequently lifting fifty pounds or more, according to the DOT the jobs of "sales route driver" and "tree pruner" only require lifting up 25 pounds frequently and up to 50 pounds occasionally. *See* DOT 292.353.010, 408.684-018. In addition, although Donaldson argues that he has limited near and far visual acuity that was not considered by the ALJ, the job of "tree pruner" states that such visual acuity is not required for the job. *See* DOT 408.684-018. The ALJ's finding that Donaldson can return to his past relevant work is also supported by the vocational assessment, which states that Donaldson is capable of performing his past relevant occupation of tree service ground man as defined in the DOT. (R.


85-86.)

Accordingly, it is recommended that the ALJ's residual functional capacity finding be affirmed.

## RECOMMENDATION

Based on a review of the record, the ALJ's decision and the relevant legal authorities, it is recommended that the ALJ's decision be affirmed.

Respectfully submitted this 22nd day of May, 2006.

 s/ Diane K. Vescovo
DIANE K. VESCOVO
UNITED STATES MAGISTRATE JUDGE